**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIAN DUPREY<br>732 Longshore Ave.<br>Philadelphia, PA 19111 : : : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | No. _____ |
| v. : | |
| : | |
| BUCKS COUNTY : | **JURY TRIAL DEMANDED** |
| 55 Court Street, 2nd Floor : | |
| Doylestown, PA 18901 : | |
| : | |
| Defendant. : | |
| : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Julian Duprey (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    This action has been initiated by Plaintiff against Bucks County (*hereinafter* referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, et. seq.), and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 et. seq). [1] Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his unlawful termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1]   Plaintiff intends to amend his instant lawsuit to include claims under the PHRA on or about January 4, 2025, once his administrative remedies are fully exhausted with the appropriate administrative agency. Plaintiff dual-filed his Charge of Discrimination on January 4, 2024. Any claims under the PHRA would mirror the instant Title VII claims identically.

## JURISDICTION AND VENUE

2.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

3.      The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state and local law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

4.      Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is a Black/African-American, Muslim adult male with an address as set forth above.

7.      Defendant is the fourth most populus county and a municipality located within the Commonwealth of Pennsylvania.

8.    At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## FACTUAL BACKGROUND

9.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.    On or about December 9, 2019, Defendant hired Plaintiff as a Corrections Officer working at the Bucks County Correctional Facility, located at 1730 S. Easton Road Doylestown, PA 18901.

11.    In total, Defendant employed Plaintiff for approximately three and a half (3.5) years until unlawfully terminating his employment on or about July 27, 2023 (as discussed herein).

12.    Defendant operates the Correctional Facility in a para-military manner with comparable job titles to that of the military and strict adherence to chain of command and expectations of absolute compliance with management directives (however illegal).

13.    During his employment with Defendant, Plaintiff primarily reported to Sergeant Anthony Cruz ("Sgt. Cruz") (White/Hispanic), Administrative Lieutenant Zachary Sherman ("Lt. Sherman"), and Captain James Nottingham ("Cpt. Nottingham") (White/Caucasian).

14.    Plaintiff is a Black/Puerto-Rican, Muslim adult male.

15.    Defendant began discriminating against Plaintiff on the basis of his race/color and/or religion, which progressively got worse until November 1, 2022, when Defendant suspended Plaintiff for approximately two (2) months under demonstrably false and pretextual circumstances.

16.    For example, prior to November 1, 2022, Plaintiff was treated in a rude and demeaning manner, unlike his White/Caucasian, non-Muslim counterparts and was also passed over for overtime opportunities that were instead offered to his White/Caucasian, non-Muslim co-workers.

17.    Plaintiff expressed concerns to Defendant's administration/management that Sgt. Cruz was treating him differently than other Corrections Officers, was continually abusive, unfair and nasty to him because he is a Black/Puerto Rican Muslim.

18.    However, upon information and belief, Defendant conducted no discrimination investigation, Plaintiff's concerns were ignored, and the harassment/discriminatory treatment continued.

19.    On or about November 1, 2022, Plaintiff radioed Sgt. Cruz inquiring about his relief after completing four (4) hours of overtime on a roving shift. Sgt. Cruz was abrasive and confrontational over the radio telling Plaintiff, "[he'll] get relieved when I come in."

20.    After concluding his shift, Plaintiff asked Sgt. Cruz in the dining room why he had been unilaterally assigned additional overtime. Sgt. Cruz responded, again in an abrasive and confrontational manner, that he could force Plaintiff to work any overtime he wanted.

21.    Plaintiff calmly expressed his concern that involuntary and extensive overtime without notice, or the ability to plan, could pose a safety issue, as Plaintiff had no way of properly resting or changing personal plans. Plaintiff's concerns were raised in a normal, professional, and legitimate manner.

22.    Sgt. Cruz, clearly incensed by Plaintiff's daring attempt to question his directives, went off the proverbial rails, and for example, (a) yelled at Plaintiff "do you want to do this here;" (b) got in Plaintiff's face and screamed, "I'm not one to play with;" (c) repeatedly yelled

at Plaintiff to "go home, go home, go home;" and (d) stated that when he saw Plaintiff outside he was going to "fuck [him] up."

23.    Despite being physically and verbally threatened, Plaintiff attempted to de-escalate the situation by asking Sgt. Cruz to calm down.

24.    Following this incident, Plaintiff reiterated to Defendant's management and Human Resources ("HR") department his concerns regarding the discriminatory treatment that he had been and was continuing to be subjected to by Sgt. Cruz because he was a Black/Puerto Rican Muslim (similar to what he complained of previously – discussed *supra*); however, his concerns again fell on deaf ears and Defendant failed to conduct any proper investigation into his concerns.

25.    In fact, Defendant's HR personnel, including Lauren Smith ("Smith") (White/Caucasian) was known for doing nothing but documenting and insulating the para-military management of Defendant to help ensure that Corrections Officers being counseled, disciplined, or terminated were removed without obstacle(s) or neutral review for and on behalf of management.

26.    Despite Plaintiff's aforesaid complaints regarding Sgt. Cruz's discriminatory treatment, Defendant suspended Plaintiff.

27.    Numerous other non-Black/ Puerto-Rican and/or non-Muslim Corrections Officers had been involved in verbal disputes/arguments, but upon information and belief, were not similarly suspended or disciplined.

28.    Plaintiff was thereafter suspended on or about November 2, 2022, for a period of approximately two (2) months until on or about January 1, 2023 (when permitted to resume working from suspension).

29.     During Plaintiff's suspension, he was required to attend a Loudermill hearing on or about November 15, 2023.

30.     Plaintiff was again singled out and made to attend a remote Loudermill hearing off site (on 11/15/23) unlike other employees outside of his protected classes, because Sgt. Cruz referred to Plaintiff as a "**terroristic** threat," a direct and abhorrent reference to Plaintiff's religion.

31.     The result of the November 15, 2023, hearing was a pretextual and fabricated Disciplinary Action Form, issued to Plaintiff on or about December 6, 2022, falsely stating, that Plaintiff was "observed screaming expletives and threatening supervisory staff [and] conducting [himself] in a belligerent manner."

32.     This aforesaid Disciplinary Action Form further falsely stated that Plaintiff was the one who initiated the confrontation by "refus[ing]" to "submit incident reports" as directed by "a Sergeant, Lieutenant and Captain."

33.     As a condition of Plaintiff resuming work on or about January 1, 2023, Defendant required him to undergo an anger management class and accept the aforesaid December 6, 2024, Disciplinary Action Form, which was labeled a Last Chance Agreement (despite that this was Plaintiff's only claimed infraction in his years of exemplary employment).

34.     Numerous other non-Black/ Puerto-Rican and/or non-Muslim Corrections Officers had been involved in verbal disputes/arguments, but upon information and belief, none were issued an immediate "final warning" or a last chance agreement as a result.

35.     A few months later, in or about July 2023, Plaintiff began making complaints to Cpt. Nottingham of ongoing and unwelcome sexual harassment and a hostile work environment

that he was experiencing at the hands of a fellow female Corrections Officer, Sierra Johnson ("Johnson").

36.    Specifically, Plaintiff complained to Cpt. Nottingham that Johnson had:

a.   Broken into and burglarized Plaintiff's apartment, ransacking and destroying his residence and personal property;

b.   Circulated compromising images of Plaintiff and explicit and sexual video footage of him;

c.   Posed as and impersonated Plaintiff, creating fake email accounts to send fake emails that Plaintiff was resigning;

d.   Continually tried to contact and communicate with Plaintiff about personal matters via phone and email (including work email); and

e.   Continued to harass him in other ways.

37.    Plaintiff had made it clear that he no longer wanted any form of sexual or romantic relationship with Johnson and was forced to apply for a Protection from Abuse Order ("PFA") against her.

38.    Despite Plaintiff's complaints and pleas for help to Cpt. Nottingham as early as on or about July 11-12, 2023, Cpt. Nottingham ignored Plaintiff and allowed Johnson to continue working (for roughly one week until on or about July 17, 2023).

39.    Plaintiff also specifically complained to Smith, and other management, that there had been ongoing discrimination, sexual harassment, and a hostile working environment that Cpt. Nottingham had neglected or intentionally ignored (discussed *supra*) *because* he was Black/ Puerto-Rican and/or Muslim.

40.    Plaintiff further complained that Cpt. Nottingham had refused to take any action in response to Plaintiff's harasser because he was still upset with Plaintiff for his prior complaints of discrimination (stemming from his interaction with Sgt. Cruz in November 2022).

41.    In response, Cpt. Nottingham falsely claimed that Plaintiff had called himself "the big bad Muslim."

42.    In reality, Plaintiff was complaining to Cpt. Nottingham that his complaints of discrimination and harassment were going ignored *because* he was Black/Puerto-Rican and/or Muslim.

43.    Within a few days, by letter dated July 27, 2023, Defendant terminated Plaintiff's employment, falsely accusing him of being "combative and disrespectful to Cpt. Nottingham during a July 12, 2023, conversation."

44.    This reasoning is demonstrably false and pretextual as Plaintiff had told Cpt. Nottingham that he was being sexually harassed, was in fear for his safety, and asked him to take steps to stop and correct the ongoing sexual harassment. Plaintiff had then complained to Smith in HR that Cpt. Nottingham had failed to take his concerns seriously and let Johnson continue working and harassing Plaintiff.

45.    To be clear, Plaintiff was at no time disrespectful, or combative, when complaining to, or about, Cpt. Nottingham.

46.    Rather, Defendant has a pattern and practice of citing "combative and disrespectful" as their go-to pretext to terminate Corrections Officers as desired.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
(Sexual Harassment & Retaliation)

47.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.    Plaintiff was subjected to a hostile work environment by way of sexual harassment from a co-worker, for which he complained of to Cpt. Nottingham, who refused to properly investigate or take immediate remedial action.

49.    Shortly following his complaints of sexual harassment and concerns regarding Cpt. Nottingham's failure to properly investigated and/or take immediate remedial action regarding his concerns of sexual harassment, Plaintiff was terminated for completely pretextual reasons.

50.    Plaintiff believes and therefore avers that he was terminated in retaliation for engaging in protected activity under Title VII.

51.    Defendant's actions as aforesaid constitute violations of Title VII.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Race/Color/Religious Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

52.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.    Plaintiff was subjected to an ongoing hostile work environment based on his race, religion, and/or complaints of race/religious discrimination through disparate treatment, pretextual discipline/reprimands, and discriminatory harassment.

54.    Plaintiff therefore avers that his race, color, and/or religion were motivating factors in Defendant's decision to terminate his employment.

55.     Plaintiff also avers that his objections to and complaints of racial and/or religious discrimination was the determinative factor in Defendant's decision to terminate his employment.

56.     Defendant's actions as aforesaid constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policies, practices, or custom(s) of discriminating against employees and are to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered the aforesaid unlawful actions at the hands of Defendant until the date of verdict;

C.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable

law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with

Federal Rule of Civil Procedure 38(b).

                              Respectfully submitted,

                              **KARPF, KARPF, & CERUTTI, P.C.**

By: _____
                              Ari R. Karpf, Esq.
                              8 Interplex Drive
                              Suite 210
                              Feasterville-Trevose, PA 19053
                              (215) 639-0801
                              (215) 639-4970 fax
                              akarpf@karpf-law.com

Dated: November 8, 2024

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Julian Duprey | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Bucks County | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 11/8/2024 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.**  *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.**  *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DUPREY, JULIAN

**DEFENDANTS**

BUCKS COUNTY

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bucks
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[X] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000)

Brief description of cause:
Violations of Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE  11/8/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____